UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IONA EZELL,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 2:20-cv-12642
District Judge Paul D. Borman
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.    Introduction

This is a social security case.  Plaintiff Iona Ezell (Ezell) brings this action

under 42 U.S.C. § 405(g), challenging the final decision of Defendant

Commissioner of Social Security (Commissioner) denying her application for

Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

under the Social Security Act (the Act).  Both parties have filed summary

judgment motions (ECF Nos. 14, 20), which have been referred to the undersigned

for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that Ezell's motion

for summary judgment (ECF No. 14) be GRANTED IN PART and the matter be

1

REMANDED to the administrative level for further proceedings and the

Commissioner's motion for summary judgment (ECF No. 20) be DENIED.

## II.     Background

### A.     Procedural History

Ezell was three years old at the time of her alleged onset date of May 26,

2004, when she was diagnosed with type 1 diabetes (also known as "juvenile

diabetes"). (ECF No. 11, PageID.129). She filed her application for SSI and DIB

in July of 2018, when she was 18 years old.[1] She previously worked as a cashier

and a police cadet. (*Id*., PageID.130). Ezell alleged disability due to her diabetes.

(*Id*., PageID.129-130).

After Ezell's application was denied at the initial level on November 27,

2018 (*Id*., PageID.300), she timely requested an administrative hearing, which was

held on October 11, 2019, before the ALJ. (*Id*., PageID.85-113). Ezell, who was

19 at the time, testified at the hearing, as did a vocational expert (VE). (*Id*.).

Ezell offered the following testimony at the hearing. She lived with her

sister. (*Id*., PageID.91). She attended Oakland Community College where she

took 12 credits and worked 20 hours each week in the financial aid office of the

college. (*Id*., PageID.91-92). Ezell had difficulties moving around while at work

---

[1] As the ALJ noted, Ezell was awarded SSI benefits as a child in a decision from a
different ALJ issued on February 6, 2008. (ECF. No. 11, PageID.61). In the
current application, Ezell is seeking benefits since turning age 18.

and sometimes experienced numbness in her knee as well as left hip pain.  (*Id.*, PageID.96-97).  The left hip pain first began in 2015 after she had surgery on her left leg and worsened if she sat for too long.  (*Id.*, PageID.98).  She had a hard time bending her left leg when putting on pants.  (*Id.*, PageID.100).  Ezell had no difficulties driving.  (*Id.*, PageID.93).

Ezell had several hospitalizations in 2018 because of diabetic ketoacidosis (DKA),[2] however, she had no hospitalizations in 2019.  (*Id.*, PageID.101-102).  She struggled to control her blood sugar because of her school and work commitments.  (*Id.*, PageID.102-104).  When her blood sugar became too high, Ezell sometimes experienced fatigue or weakness.  (*Id.*, PageID.104).  If Ezell worked too many hours, she became lightheaded, dizzy, or sweaty.  (*Id.*, PageID.106-107).

On October 30, 2019, the ALJ issued a written decision finding that Ezell was not disabled.  (*Id.*, PageID.58-70).  On July 23, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

---

[2] "Diabetic ketoacidosis is a serious complication of diabetes that occurs when your body produces high levels of blood acids called ketones.  The condition develops when your body can't produce enough insulin.  Insulin normally plays a key role in helping sugar (glucose) — a major source of energy for your muscles and other tissues — enter your cells.  Without enough insulin, your body begins to break down fat as fuel.  This process produces a buildup of acids in the bloodstream called ketones, eventually leading to diabetic ketoacidosis if untreated."  https://www.mayoclinic.org/diseases-conditions/diabetic-ketoacidosis/symptoms-causes/syc-20371551 (last visited Feb. 3, 2022).

(*Id.*, PageID.50-54).  Ezell timely filed for judicial review of the final decision. (ECF No. 1).

### B.    Medical Evidence

Records indicate that Ezell was hospitalized six times in 2013 and one time in 2014 for DKA.  (ECF 11, PageID.405).  Records from March 2015 indicate that Child Protective Services (CPS) became involved because of the inability of Ezell's parents to properly manage her diabetes.  (*Id.*, PageID.405-406).  March 2015 records further indicate that Ezell's diabetes "remain[ed] uncontrolled."  (*Id.*, PageID.407).

Ezell was hospitalized from April 6, 2015 through April 9, 2015, for hypoglycemia (low blood sugar) and DKA.  (*Id.*, PageID.409).  She presented to the hospital with "elevated glucose, abdominal pain, and vomiting, found to be in DKA."  (*Id.*).  Upon admission, Ezell was transferred to the Pediatric Intensive Care Unit (PICU).  (*Id.*, PageID.410).  Notes reflect that Ezell's DKA was caused by "insulin non-adhearance [sic] due to a malfunctioning glucometer."  (*Id.*, PageID.422).  Additionally, Ezell's "A1c [was] 14.2 reflecting poor long term control."  (*Id.*).

Ezell was hospitalized from May 6, 2015 through May 12, 2015, for a urinary tract infection (UTI), DKA, and pancreatitis.  (*Id.*, PageID.453).  Ezell had a syncopal (fainting) episode walking to school following recent "repeat readings

of high blood glucose likely secondary to medication non compliance." (*Id*.).  It was noted that Ezell had hepatomegaly (enlarged liver) for which she was followed by gastroenterology.  (*Id*., PageID.454).  It was recommended that Ezell begin outpatient psychotherapy for depression with a primary focus on her "nonadherence to medical regimen."  (*Id*.).

On August 27, 2015, Ezell underwent left leg surgery in order to correct a leg length discrepancy.  (*Id*., PageID.522).  September 2015 records indicate that Ezell was "doing well," however, she was experiencing "some swelling and [had] some mild difficulty in flexing her knee."  (*Id*.).  Ezell's range of motion was also limited.  (*Id*.).

Records from the University of Michigan (UM) indicate that Ezell transferred care to UM in April 2014, however, she went from May 2014 until July 2015 without a visit to UM.  (*Id*., PageID.526).  Ezell returned to UM for an appointment in July 2015, and it was noted that her glucose and A1c were elevated.  (*Id*., PageID.532).  It was recommended that Ezell "cover all snacks with appropriate insulin doses."  (*Id*., PageID.533).  At an October 2015 UM appointment, Ezell's glucose and A1c were elevated.  (*Id*., PageID.527).  Ezell reported that she was not taking insulin with snacks.  (*Id*., PageID.526).

In January 2016, Ezell was evaluated for left knee pain.  (*Id*., PageID.727).  Imaging of the knee was normal, and the doctor imposed no restrictions.  (*Id*.,

5

PageID.730).  At her February 2016 UM appointment, it was noted that Ezell's blood sugar was high in the morning "likely to be due to night time snacking." (*Id*., PageID.539).  Ezell was still not covering her snacks.  (*Id*.).  Her glucose and A1c were both elevated.  (*Id*., PageID.541).

In June 2016, Ezell returned to UM for an appointment and she reported that "[s]he continue[d] to take insulin after meals."  (*Id*., PageID.548-549).  Her blood sugar was heightened in the mornings "likely to be due to missing insulin at snacks."  (*Id*., PageID.549).  Ezell's A1c remained elevated.  (*Id*., PageID.551).  At an October 2016 UM appointment, Ezell reported that "[s]he continue[d] to take insulin after meals about 25% of the time."  (*Id*., PageID.557).  Ezell was covering snacks.  (*Id*.).  Her blood glucose log indicated that she had elevated blood sugar in the morning and low blood sugar before dinner.  (*Id*.).  Ezell's glucose and A1c were elevated.  (*Id*., PageID.560).

At her February 2017 UM appointment, Ezell reported that "[s]he continue[d] to take insulin after meals about 25% of the time."  (*Id*., PageID.563).  Ezell was covering snacks.  (*Id*.).  Her A1c was elevated.  (*Id*., PageID.566).  In June 2017, Ezell reported to her UM provider that she "ha[d] been missing Lantus doses . . . and continue[d] to take insulin after meals 25% of the time."  (*Id*., PageID.570).  She was also missing Novolog.  (*Id*.).  Both her A1c and glucose were elevated.  (*Id*., PageID.571).  At her October 2017 UM appointment, Ezell

6

reported that she continued to miss Lantus doses and Novolog.  (*Id*., PageID.584).

She also reported that she "continue[d] to take insulin after meals 25-50% of the

time." (*Id*.).  Ezell's A1c and glucose were both high.  (*Id*., PageID.586).

In March 2018, Ezell reported to her UM provider that she continued to miss

Basaglar doses and Novolog.  (*Id*., PageID.593).  She further reported that she

"continue[d] to take insulin after meals 25-50% of the time." (*Id*.).  Both her

glucose and A1c were elevated.  (*Id*., PageID.595).

Also in March 2018, Ezell was reevaluated for left knee pain.  (*Id*.,

PageID.679).  Imaging showed no arthritic changes and "[h]ardware along lateral

femoral cortex intact.  (*Id*., PageID.683).  The diagnosis was acquired genu valgum

(knock-knee deformity) of left knee.  (*Id*.).  Ezell was given no restrictions.  (*Id*.).

Ezell was hospitalized from April 27, 2018 through April 28, 2018 for DKA.

(*Id*., PageID.685).  Ezell was experiencing chest pain and mild gastritis symptoms.

(*Id*., PageID.686).  Ezell's mother reported that Ezell "ha[d] not been handling her

insulin nearly as well as she had been over the past few months." (*Id*.).

Ezell was again hospitalized from June 4, 2018 through June 8, 2018, for

DKA, hyperglycemia (high blood sugar), and helicobacter pylori gastritis.  (*Id*.,

PageID.788).  Ezell presented to the hospital with nausea and light headedness.

(*Id*.).  She had been having abdominal pain for months and her gastroenterologist

performed an endoscope and discovered she had helicobacter pylori gastritis—a

type of stomach infection—for which he prescribed antibiotics on May 25, 2018.

(*Id.*, PageID.788-789).  Ezell's mother reported that Ezell had not been taking the

prescribed antibiotics regularly.  (*Id.*).

On November 6, 2018, Ezell was examined for the Social Security

Administration (SSA) by Cynthia Shelby-Lane, M.D.  (*Id.*, PageID.873).  Dr.

Shelby-Lane's medical source statement was as follows:

> Based on today's exam, including the history and physical exam,
> [Ezell] has frequent limitations with standing and walking due to
> history of diabetic neuropathy and chronic pain with standing for
> prolonged periods of time.  In addition, [Ezell] has poorly controlled
> diabetes and hemoglobin A1c that is 14.8 causing multiple problems
> related to ongoing care and management for her diabetes due to it being
> poorly controlled.

(*Id.*, PageID.875).

Additionally, September 2017, October 2017, November 2017, January

2018, March 2018, April 2018, July 2018, October 2018, January 2019, and April

2019 primary care records reflect that Ezell complained of acute back pain as well

as hip and lumbar pain.  (*Id.*, PageID.645, 648, 650, 653, 655, 659-660, 664-665,

669, 672, 676, 915, 919, 921, 925-926, 929, 936, 939).  Imaging from March 2017

of Ezell's lumbar spine was normal.  (*Id.*, PageID.636).

III.   Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education, or work
> experience.
>
> Step Four: If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Ezell was not disabled under the Act. At Step One, the ALJ found that Ezell had not engaged in substantial gainful activity since May 26, 2004 (alleged onset date). (ECF No. 11, PageID.64). At Step Two, the ALJ found that she had the severe impairment of diabetes mellitus, type 1. (*Id.*). At Step Three, the ALJ found that Ezell's impairment did not meet or medically equal a listed impairment. (*Id.*, PageID.65).

The ALJ then assessed Ezell's RFC, concluding that she was capable of performing "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should not climb ladder[s], ropes, or scaffolds and should not work at unprotected height." (*Id.*).

At Step Four, the ALJ found that Ezell had no past relevant work. (*Id.*, PageID.68). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Ezell was capable of performing the jobs of office helper (120,000 jobs nationally), cashier (575,000 jobs nationally), and router (150,000 jobs nationally). (*Id.*, PageID.68-69). As a

result, the ALJ concluded that Ezell was not disabled under the Act. (*Id*.,

PageID.69).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g). Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one. Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision. *Tucker v. Comm'r of Soc. Sec*., 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec*.,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence." 42

U.S.C. § 405(g). The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

11

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that

error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(internal quotations omitted).

## V.   Analysis

Ezell presents four arguments in support of her motion for summary

judgment: (1) whether the ALJ adequately supported her decision to reflect Dr.

Shelby-Lane's opinion; (2) whether the ALJ erred at Step Three; (3) whether the

RFC accurately captured the medical evidence; and (4) whether the ALJ erred in

rejecting the VE's testimony.  Each argument will be considered in turn below.

### A.   Dr. Shelby-Lane's Opinion

Ezell argues that the ALJ erred in analyzing the relevant medical evidence

and improperly rejected the opinion of the state agency medical consultant, Dr.

Shelby-Lane.  Ezell contends that her well-documented uncontrolled diabetes and

digestive system conditions support Dr. Shelby-Lane's endorsement of the

subjective claims.  She cites the records showing elevated glucose and A1c levels;

multiple hospitalizations for DKA; and a history of gastrointestinal issues with

infection.  (See Section II.B., above).

Under the current regulations, specifically 20 C.F.R. § 404.1520c(b), the

ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and

all of the prior administrative medical findings in [the claimant's] case record."

The ALJ evaluates the persuasiveness of the medical opinions and prior administrative medical findings by utilizing the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c). Supportability and consistency are the most important factors and the ALJ must explain how he considered these factors in his decision. § 404.1520c(b)(2).

As previously stated, Dr. Shelby-Lane's medical source statement concluded as follows:

> Based on today's exam, including the history and physical exam, [Ezell] has frequent limitations with standing and walking due to history of diabetic neuropathy and chronic pain with standing for prolonged periods of time. In addition, [Ezell] has poorly controlled diabetes and hemoglobin A1c that is 14.8 causing multiple problems related to ongoing care and management for her diabetes due to it being poorly controlled.

(*Id.*, PageID.875).

The ALJ stated that she was "unpersuaded" by Dr. Shelby-Lane's opinion. (*Id.*, PageID.68). She found that Dr. Shelby-Lane's conclusion that Ezell has standing and walking limitations was "inconsistent and unsupported by even her own objective findings on examination of [Ezell] as well as the remainder of the medical evidence." (*Id.*). The ALJ reasoned that "apart from acute periods of DKA requiring hospitalization (none since she has reached age 18), [Ezell] has exhibited normal findings on examination and has reported that she exercises

14

regularly." (*Id*.). She further explained that Dr. Shelby-Lane's "opinion [was] seemingly based solely on [Ezell's] report of abilities." (*Id*.).

Standing alone, the ALJ's observation that Dr. Shelby-Lane's examination was mostly unremarkable was an adequate reason to reject her conclusion. *See Gooch v. Comm'r of Soc. Sec.*, No. 18-13920, 2020 WL 1303213, at *4 (E.D. Mich. Mar. 18, 2020) ("When reviewing an ALJ's decision, the Magistrate Judge must look at whether the evidence reasonably supported the ALJ's conclusion, not whether the evidence could also support a different determination."). As the ALJ stated, "[w]hile [Ezell] had a slight limitation in flexion of the lumbar spine and 50% reduction in forward flexion of the hips bilaterally, the remainder of [Dr. Shelby-Lane's] examination was wholly unremarkable." (*Id*., PageID.67). Additionally, when Ezell was evaluated and reevaluated for left knee pain, no restrictions were imposed. Similarly, imaging of Ezell's left knee and lumbar spine was normal. As such, the ALJ's articulated reasons for finding Dr. Shelby-Lane's assessed limitations unpersuasive does not provide grounds for remand.

## B.    Step Three

Next, Ezell argues that this case "should be remanded back to the Commissioner because the ALJ failed to properly evaluate her claim under (a) the listed impairments of Listing 9.00 (Endocrine Disorders) or (b) a combination of

15

the listed impairments at Listings 9.00 and 11.00 (Neurological – Adult)."  (ECF No. 14, PageID.967-968 (footnotes omitted)).

Ezell further argues that she meets the requirements of both Listing 9.00 and Listing 11.14.  However, she provides no analysis of *how* she meets the requirements in her motion for summary judgment.  Instead, she simply states that "[t]he weight of the medical record indicates that [she] met the qualifications. . . ." (ECF No. 14, PageID.972).  The undersigned thus agrees with the Commissioner that "[r]ather than attempt to meet her burden of proof, [Ezell] asserts an articulation error, terming the ALJ's step-three analysis 'cursory.' "  (ECF No. 20, PageID.999) (citing ECF No. 14, PageID.969).  This is not a basis for remand. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (holding that any error with respect to the ALJ's step three analysis is harmless unless the claimant can establish that he satisfied the listing in question); *see also Berry v. Saul*, No. 18-00046, 2019 WL 4923979, at *11 (M.D. Tenn. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 4916566 (M.D. Tenn. Oct. 4, 2019) ("Berry does not provide any argument specific to the above criteria or mention the criteria at all.  Instead, she states that she suffers from 'chronic high blood sugar; chronic infections; falls; and neuropathies severely affecting the hands and feet.' She then cites her testimony and Dr. Herrera's treatment records, without any discussion, to support her claim that she suffers from 'listing-level diabetes with

16

neuropathy.' ") (transcript citations omitted); *Beauchamp v. Comm'r of Soc. Sec.*, No. 12-2839, 2014 WL 1154117, at *9 (N.D. Ohio Mar. 21, 2014) ("Important here, the ALJ discussed Plaintiff's diabetes and symptoms at length, and the evidence clearly shows Plaintiff did not meet or equal any listed impairment in 9.00."). For these reasons, remand is not appropriate on the ground that ALJ failed to properly evaluate Ezell's claim at Step Three.

Moreover, substantial evidence supports the finding that Ezell did not meet all of the requirements of Listing 9.00, 11.00, or 11.14. Listing 9.00, which addresses endocrine disorders, contains a subsection specific to diabetes. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 9.00(B)(5). That subsection, in turn, references typical physical symptoms of uncontrolled diabetes (DKA, chronic hyperglycemia, and hypoglycemia), which are evaluated primarily pursuant to listing 11.00. *Id*. To meet or equal listing 11.00, a claimant must show a marked limitation in physical functioning,[3] as well as a marked limitation in at least one of the four domains of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace;

---

[3] A marked limitation in physical functioning is further defined as "persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, or walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower activity." *Id*. at § 11.00(G)(2)(a).

and adapting or managing oneself.  *Id*. at § 11.00(G).  Meanwhile, Listing 11.14 (peripheral neuropathy), cited by Ezell, requires a claimant to satisfy either the requirements stated above, or show "[d]isorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." *Id*. at § 11.14(A).

The record does not support a finding of a marked limitation in either physical or mental functioning as required by Listing 11.00.  Similarly, nothing in the record demonstrates that Ezell has disorganization of motor function leading to extreme limitation in her ability to stand up from a seated position, balance while standing or walking, or use her upper extremities as required by Listing 11.14. Ezell is unable to demonstrate that she meets all of the requirements for any of the aforementioned listings.  That is not to say, however, that Ezell is not disabled.  It simply means she does not meet a listing.

## C.    RFC

Ezell argues that the RFC allowing for a significant range of exertionally light work is based on a misinterpretation of the medical evidence, an unsupported rejection of her subjective claims, and a blatant misstatement of the record.  Thus, she says that the RFC does not reflect her full degree of limitations.

In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability.  20 C.F.R. §§ 404.1545(a)(1) (RFC must be based on all "relevant evidence").  The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  In crafting the RFC, the ALJ must consider the restrictions alleged by the claimant.  §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

Here, the ALJ assessed Ezell's RFC, concluding that she was capable of performing "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should not climb ladder[s], ropes, or scaffolds and should not work at unprotected height."  (ECF No. 11, PageID.65).

The undersigned agrees that the RFC is not adequately supported or explained.  Under the Social Security Regulations (SSR), the ALJ was required to follow a two-step process when evaluating Ezell's subjective symptoms.  20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

The ALJ must first confirm that objective medical evidence of the underlying condition exists, and second, determine whether that condition could reasonably be expected to produce the alleged subjective symptom, considering other evidence, including: (1) daily activities; (2) location, duration, frequency, and

19

intensity of the symptom; (3) precipitating and aggravating factors; (4) type,

dosage, effectiveness, and side-effect of any medication; (5) treatment, other than

medication received; (6) any means used to relieve the symptom; and (7) other

factors concerning functional limitations.  20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3); SSR 16-3p.  The ALJ provided the following rationale for the

finding that Ezell could perform exertionally light work:

> Given the indication in the treatment records that the claimant's
> diabetes has been poorly controlled, I find her limited to light work with
> limitations that would protect her in case of episodes of dizziness,
> lightheadedness, or weakness that might come about from her blood
> sugars being too high or too low.  She currently works 20 hours per
> week at Oakland Community College and takes 16 credit hours of
> classes.  She has not had any hospitalizations since June of 2018.

(ECF No 11, PageID.67).

The ALJ's evaluation of the subjective allegations founders at the second

step of the SSR 16-3p analysis.[4]  First, the ALJ's statement that Ezell takes 16

credit hours at Oakland Community College is incorrect.  Ezell testified that she

takes 12 credit hours of classes.  *See Parish v. Califano*, 642 F.2d 188, 191 (6th

Cir. 1981) ("Attending college on a part-time basis is not the equivalent of being

able to engage in substantial gainful activity.  Seven or eight classroom hours are

---

[4] Although, as described above, the ALJ was allowed to reject Dr. Shelby-Lane's
conclusion, it is worth noting that Shelby-Lane, a medical doctor, accepted Ezell's
subjective claims that were not verifiable at the exam because they were supported
by the objective testing and medical history.

20

much less demanding than full-time remunerative work."); *see also Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 946 (E.D. Mich. 2017) ("Having the ability to attend college classes for an hour or so at a time is not the same as having the ability to engage in a typical 40–hour workweek (i.e., engage in substantial gainful activity).").

Second, the lack of hospitalization alone does not mean Ezell was able to maintain full-time work. *See Collins v Comm'r of Soc. Sec.*, No. 1:17CV0769, 2018 WL 3372950, at *5 (N.D. Ohio July 11, 2018) ("The ALJ used the lack of hospitalization for diabetes to undermine Plaintiff's credibility, but failed to address the fact that other impairments were affecting her daily performance."). Notably, while the ALJ noted that Ezell was able to work part-time, the record indicates that her ability to work part-time was hampered by her need for frequent breaks. Ezell testified that when worked part-time at Sonic, she required special breaks because of diabetes-related symptoms. (ECF No. 11, PageID.106). Further,

Ezell's testimony regarding her symptoms is also consistent with significant work-related impairment due to the symptoms of hyperglycemia. She testified that when her blood sugar became too high, she sometimes experienced fatigue or weakness and if she worked too many hours, she became lightheaded, dizzy, or sweaty. (*Id*., PageID.104, 106-107). Michigan Medicine lists the symptoms of

21

moderate to severe high blood sugar as blurred vision; extreme thirst; lightheadedness; flushed, hot, and dry skin; and restlessness, drowsiness, or difficulty waking up.[5] The medical record establishes that Ezell frequently has moderate to severe high blood sugar and her professed symptoms are wholly consistent with the expected symptoms of diabetes. (*Id.*, PageID.532, 541, 551, 560, 566, 586, 595). The ALJ did not properly account for how these symptoms would impact Ezell's ability to work. Moreover, there is no indication or argument that Ezell was malingering in describing her symptoms. Contrary to the ALJ's finding that "[Ezell's] statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the objective medical evidence," (*Id.*, PageID.66), the medical evidence showing uncontrolled blood sugar levels supports rather than undermine Ezell's allegations of fatigue and lack of stamina. Although the ALJ provided an ostensibly adequate evaluation of the subjective symptoms, her purported rationale for the RFC is based on either misstatements or portions of the record that do not undermine Ezell's allegations of limitation. In any event, the ALJ's flawed evaluation, juxtaposed with evidence strongly supporting Ezell's claims, is not sufficient support the finding that she could stand or walk for six hours in an eight-hour workday limited only by a preclusion on ladders, ropes, scaffolds, or unprotected heights. (*Id.*, PageID.67).

---

[5] https://www.uofmhealth.org/health-library/aa21178 (Last visited Feb. 16, 2022).

Accordingly, the undersigned recommends remanding the case to the

Commissioner for further evaluation of the subjective symptoms.

### D.    VE's Testimony

Ezell argues, in effect, that the VE's job findings forming the basis of the

Step Five determination were not supported by substantial evidence.  Specifically,

she contends that the VE's job testimony was given in response to a hypothetical

question that did not include her well established need for frequent breaks.  She

cites the VE's alternative testimony that the need for frequent breaks would

preclude all gainful employment.  (ECF No. 11, PageID.110).

"The SSA's burden at the fifth step is to prove the availability of jobs in the

national economy that the claimant is capable of performing." *Jordan v. Comm'r*

*of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  Here, the VE testified that a

hypothetical individual could maintain competitive employment if she were off-

task 15 percent of an eight-hour workday, but not if she were off-task 20 percent of

the workday.  (*Id.*).  As previously stated, Ezell testified that she required frequent

breaks when working at Sonic.  The medical records showing that she continued to

experience uncontrolled blood sugar instability support these allegations.

It is well settled that job findings made in response to a hypothetical

question that does not include the claimant's full degree of limitation do not

constitute substantial evidence in support of a Step Five determination.  *See Ealy v.*

*Comm'r of Soc. Sec*, 594 F.3d 504, 517 (6th Cir. 2010) ("Because the controlling

hypothetical inadequately described Ealy's limitations, the expert's conclusion that

Ealy could work as an assembler, inspector, packer, or production worker does not

serve as substantial evidence that Ealy could perform this work."); *see also*

*Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, (E.D. Mich. 2003)

("Because the VE's testimony was the only step five evidence that the ALJ relied

upon, the Court cannot rule that there is substantial evidence to support the ALJ's

findings.").  Accordingly, remand is appropriate in this case.

### E.     In Sum

The record establishes that Ezell has the severe impairment of diabetes.  It

further establishes that throughout her childhood her diabetes was poorly

controlled.  Indeed, the record indicates that Ezell's parents were apparently unable

or not equipped to assist her in properly managing her diabetes as a child, leading

to sometimes serious complications.  Ezell continues to struggle to control her

diabetes leading to consistently high glucose and A1c readings.  Her elevated

blood sugar levels have led to a number of symptoms that impair her ability to

maintain full-time employment which were improperly disregarded by the ALJ.

Moreover, while Ezell attended college and attempted to work part-time the record

shows that these activities were compromised by chronic and significant

limitations.  While the errors discussed herein do not automatically entitle Ezell to

an award of benefits, the ALJ's rationale is insufficient to support the conclusion that she was capable of exertionally light work.  *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.' ") (internal quotations and citation omitted).  Accordingly, the undersigned recommends remanding the case to the Commissioner for further proceedings.

## VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that Ezell's motion for summary judgment be GRANTED IN PART and the matter be remanded to the administrative level for further proceedings and the Commissioner's motion for summary judgment be DENIED.


Dated: February 18, 2022                    s/Kimberly G. Altman
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2022.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager